UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


FREDDIE A. LAND,

      Petitioner,

-vs-                                      Case No.  8:04-cv-2524-T-27TGW

SECRETARY, DEPARTMENT OF
CORRECTIONS,

      Respondent.

_____/


## ORDER

Before the Court is a petition for writ of habeas corpus filed by Petitioner, an inmate in a Florida penal institution, *pro se* pursuant to 28 U.S.C. § 2254 challenging a life sentence entered by the Sixth Judicial Circuit Court, Pinellas County, Florida (Dkt. 1). Petitioner's challenge relates to his 1999 conviction for capital sexual battery. Respondent filed a response to the Petition (Dkt. 12), and Petitioner filed a reply to the response (Dkt. 18). The matter is now before the Court for consideration on the merits of the petition. A recitation of the procedural history of Petitioner's criminal conviction is not necessary to the resolution of his habeas claims because Respondent does not dispute the timeliness of the petition.

### Evidentiary Hearing

The Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing. *See Smith v. Singletary*, 170 F.3.d 1051, 1053-54 (11th Cir. 1999). The pertinent facts of the case are fully developed in the record before the Court. *See Cave v. Singletary*, 971 F.2d

1513, 1516 (11th Cir. 1992). Thus, no additional evidentiary proceedings are required. *See High v. Head*, 209 F.3d 1257, 1263 (11th Cir. 2000), *cert. denied*, 532 U.S. 909 (2001) (citing *McCleskey v. Zant*, 499 U.S. 467, 494 (1991)).

### Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), signed into law on April 24, 1996, amended the statutes governing federal habeas relief for state prisoners. Because Petitioner filed his petition after April 24, 1996, the AEDPA provisions are applicable to the petition. *See Wilcox v. Florida Dep't of Corrections*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Where a state court initially considers the issues raised in the petition and enters a decision on the merits, 28 U.S.C. § 2254(d) governs the review of those claims. *See Mobley v. Head*, 267 F.3d 1312, 1316 (11th Cir. 2001), *cert. denied*, 536 U.S. 968 (2002) (finding that the court must deny the writ unless one of two § 2254(d) exceptions applies).

Section § 2254 creates a deferential standard for federal court review of state court adjudications. In pertinent part, § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Eleventh Circuit interpreted the new standard in *Putman v. Head*:

The "contrary to" and "unreasonable application" clauses of § 2254(d)(1) are separate bases for reviewing a state court's decisions. *See Williams v. Taylor*, 529 U.S. 362, 404-05, 120 S.Ct. 1495, 1519, 146 L.Ed.2d 389 (2000). A state court decision is "contrary to" clearly established federal law if either (1) the state court applied a rule that contradicts the governing law set forth by Supreme Court case law, or (2) when faced with materially indistinguishable facts, the state court arrived at a result different from that reached in a Supreme Court case. *See Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000).

A state court conducts an "unreasonable application" of clearly established federal law if it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case. *See id.* An unreasonable application may also occur if a state court unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context. *See id.* Notably, an "unreasonable application" is an "objectively unreasonable" application. *See Williams*, 529 U.S. at 412, 120 S.Ct. at 1523.

Lastly, § 2254(d)(1) provides a measuring stick for federal habeas courts reviewing state court decisions. That measuring stick is "clearly established Federal law." 28 U.S.C. § 2254(d). Clearly established federal law is *not* the case law of the lower federal courts, including this Court. Instead, in the habeas context, clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision." *Williams*, 529 U.S. at 412, 120 S.Ct. at 1523.

268 F. 3d 1223, 1241 (11th Cir. 2001) (footnotes omitted).

Because a state court initially considered the issues raised in the petition and entered a decision on the merits, § 2254(d) governs the review of Petitioner's claims. *See Mobley*, 267 F.3d at 1316. In a decision addressing the level of deference a federal habeas court should accord the state court's decision under § 2254(d), the Supreme Court stated:

A federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system. . . . [however], deference does not imply abandonment or abdication of judicial review. Deference does not by definition preclude relief. A federal court can disagree with a state court's credibility determination and, when guided by AEDPA, conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence.

3

*Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A petitioner has the burden of overcoming all state court factual determinations by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

### Ineffective Assistance of Counsel

Petitioner claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998).

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland v. Washington*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims v. Singletary*, 155 F.3d at 1305 ("When applying Strickland,

we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland v. Washington*, 466 U.S. at 690. Strickland requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland v. Washington*, 466 U.S. at 690.

Because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment," Petitioner must demonstrate that error by counsel prejudiced the defense. *Strickland v. Washington*, 466 U.S. at 691-92. To meet this burden, Petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland v. Washington*, 466 U.S. at 694.

## Discussion

In his petition for federal habeas relief, Petitioner raises the following nine (9) claims:

1. Petitioner was arrested and detained with an arrest warrant which was obtained with purposefully inaccurate information, thus violating Petitioner's Fourth and Fourteenth Amendment rights;

2. Trial counsel was ineffective for failing to make a contemporaneous objection to the admission of Petitioner's statement to Detective Lowe, which had been the subject of a separate motion to suppress;

3. The trial court erred in denying Petitioner the right to present evidence that the victim had previously accused her father of similar sexual abuse;

4. The trial court erred in overruling Petitioner's objections to the child hearsay testimony because this testimony was cumulative and unfairly prejudicial;

5. Trial counsel was ineffective for failing to object to improper comments on witness credibility;

6. Trial counsel rendered ineffective assistance by failing to object to improper evidence of uncharged crimes in violation of Florida Statute 90.404(2)(1997); *Williams v. State*, 110 So. 2d 654 (Fla.1959);

7. Trial counsel was ineffective for failing to object to three points concerning child hearsay videotape deposition in violation of Article 1, Section 9, Fla. Constitution and the confrontation clause and due process;

8. Trial counsel was ineffective for failing to object to improper and prejudicial remarks by the prosecutor in closing argument;

9. The lower court erred in denying Petitioner the opportunity to amend/supplement his 3.850 motion for postconviction relief.

**Ground One**

Petitioner asserts that his Fourth and Fourteenth Amendment rights were violated when Detective Lowe's witness affidavit which included inaccurate information was used to find probable cause to arrest him. Specifically, Petitioner states that Detective Lowe knew that there were inconsistencies between the statement the eight year old victim made to the nurse at the Child Protection Team clinic, and the subsequent statement the victim gave to him. Petitioner also states that Detective Lowe knew that the victim's mother recanted her statement that Petitioner had admitted to her that he had been performing sexual acts with the victim.

"[T]he test to be applied in a federal habeas court in testing the legality of an arrest is federal probable cause." *Paige v. Potts*, 354 F.2d 212, 214 (5th Cir.-OLD 1965). An arrest

6

without probable cause violates the Fourth Amendment. *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir. 1997). Probable cause exists when police have, at the moment of arrest, knowledge of facts and circumstances grounded in reasonably trustworthy information and sufficient in themselves to warrant a belief by a prudent person that an offense has been committed or is being committed by the person to be arrested. *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Pickens v. Hollowell*, 59 F.3d 1203, 1205 (11th Cir. 1995). "Because sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment, probable cause itself is a doctrine of reasonable probability and not certainty." *Craig v. Singletary*, 127 F.3d 1030 (11th Cir. 1997)(citations and internal quotations omitted). "Generally, an officer is entitled to rely on a victim's criminal complaint as support for probable cause." *Rankin v. Evans*, 133 F.3d 1425, 1441 (11th Cir. 1998). Although a child victim's statements must be evaluated in light of the child's age, the statements will support probable cause for an arrest where they are sufficiently reliable and trustworthy at their core. *Id.*

There is no indication from the record and Petitioner does not demonstrate that prior to Detective Lowe's February 19, 1997 sworn affidavit, the victim's mother had recanted her statement that Petitioner had admitted to sexual acts with the victim (*See* Dkt. 1 at Ex. D). Moreover, even if the victim's statement to the nurse was inconsistent with the statement the victim gave to Detective Lowe regarding whether Petitioner put his penis in the victim's mouth, the other statements of the victim and the victim's mother were consistent and provided reasonably trustworthy information to warrant a belief that Petitioner had committed sexual acts on the victim (*See* Dkt. 1 at Exs. A-B). Petitioner fails to demonstrate that his Fourth and Fourteenth Amendment rights were violated. Therefore, Ground One will be denied.

**Ground Two**

In Ground Two of his petition, Petitioner claims counsel was ineffective for failing to object to the admission at trial of his statement to Detective Lowe on February 20, 1997 (*See* Dkt. 16, Ex. 001, Vol. II at 177-82).  Petitioner's prior counsel had moved prior to trial to suppress the statement, but the state trial court denied that motion (Dkt. 16, Ex. 001, Supplement).

In Ground Six of his Rule 3.850 state post-conviction motion, Petitioner's claim was that counsel was ineffective for failing to adequately impeach Detective Lowe's testimony (Dkt. 16, Ex. 003, Vol. I at 17-19).  This claim is different than the claim Petitioner now presents in Ground Two of his federal habeas petition.

Issues presented in a federal habeas corpus petition must have been fairly presented to the state courts and exhausted prior to presentation in a Section 2254 petition.[1]  See 28 U.S.C. § 2254(b)(1); *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005). To exhaust a claim sufficiently, a petitioner must have presented the state court with the particular legal basis for relief in addition to the facts supporting it. *See Diaz v. Sec'y for the Dep't of Corr.*, 2006 U.S. Dist. LEXIS 86457, 2006 WL 3469522 at *1 (S.D. Fla., Sept. 18, 2006) (citing *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317 (11th Cir. 2004)). While it is not necessary that a petitioner present in the federal habeas proceeding "a verbatim restatement of the claims brought in state court," in cases involving ineffective assistance of counsel claims, habeas petitioners may not

---

[1]Although the State did not specifically assert an exhaustion argument in its response to this claim, where the AEDPA applies, the State will not be deemed to have waived the exhaustion requirement unless the State expressly indicates its intention to waive the requirement. *See Diaz v. Sec'y for the Dep't of Corr.*, 2006 U.S. Dist. LEXIS 86457, 2006 WL 3469522 at *1 (S.D. Fla., Sept. 18, 2006); 28 U.S.C. § 2254(b)(3)

present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts. *Diaz v. Sec'y for the Dep't of Corr.*, 2006 U.S. Dist. LEXIS 86457, 2006 WL 3469522 at *2 (citing *McNair v. Campbell*, 416 F.3d at 1302; *Johnston v. Singletary*, 162 F.3d 630, 634-5 (11th Cir. 1998); *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992)). Where a petitioner raises an ineffective assistance of counsel claim in state court, but alleges different supporting facts in his federal habeas proceeding, he will be deemed to have failed to fairly present the federal claim to the state court. *Weeks v. Jones*, 26 F.3d 1030, 1044-46 (11th Cir. 1994) (rejecting petitioner's argument that "the general claim of ineffective assistance of counsel in state court preserves for federal review all alleged instances of ineffectiveness, regardless of whether evidence of a particular act was presented to the state court"). A petitioner must present his claims to the state courts so that the courts have the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d at 1344 (citing *Picard v. Connor*, 404 U.S. 270 (1971)). The prohibition against raising unexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific factual contentions that might support relief. *Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d at 1344.

Petitioner did not directly present the ineffective assistance of counsel claim presented in Ground Two of the instant petition to the state courts in his Rule 3.850 motion. However, Petitioner cannot return to state court to raise this claim because the claim would be procedurally barred. *Tafero v. State*, 561 So.2d 557 (Fla. 1990) (additional claims of ineffective assistance of counsel cannot be raised in a successive motion for post-conviction relief where ineffectiveness was raised and addressed in the first motion)); Fla. R. Crim. P. 3.850(b), (f).

Portions of a petitioner's claim that are not exhausted but would clearly be barred if returned to state court must be dismissed. *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993). "An issue that was not properly presented to the state court which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review." *Cobbs v. McDonough*, 2006 U.S. Dist. LEXIS 52456, 2006 WL 2092381 at *8 (M.D. Fla., July 26, 2006) (citing *O'Sullivan v. Boerckel*, 526 U.S. 838, 839-40 (1999)). Accordingly, this Court cannot consider Petitioner's claim unless he shows that the cause and prejudice or the fundamental miscarriage of justice exception is applicable. *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001); *O'Sullivan v. Boerckel*, 526 U.S. at 845-6.

Pursuant to the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d at 1138. To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage, infecting the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). In other words, he must show at least a reasonable probability of a different outcome. *Henderson v. Haley*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A petitioner may obtain federal habeas review of a procedurally defaulted claim, without

10

a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451(2000); *Murray v. Carrier*, 477 U.S. at 495-96; *Henderson v. Haley*, 353 F.3d at 892. "A 'fundamental miscarriage of justice' occurs in an extraordinary case where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson v. Haley*, 353 F.3d at 892. This exception requires a petitioner's "actual" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995).

Petitioner fails to demonstrate cause and prejudice excusing his default.[2] Petitioner has neither alleged nor shown that the fundamental miscarriage of justice exception applies. Because Petitioner fails to proffer specific facts showing an exception to procedural default, *Hill v. Jones*, 81 F.3d 1015 (11th Cir. 1996), Ground Two is procedurally barred from federal review.

Respondent argues that Petitioner's claim is procedurally barred because collateral counsel abandoned it during the Rule 3.850 proceedings. In Petitioner's written closing arguments following the Rule 3.850 evidentiary hearing, counsel stated "Petitioner acknowledges

---

[2]Petitioner attempted to raise this claim in an amended 3.850 motion (Dkt. 1, Ex. F, at 3, issue "C"). However, the state court denied Petitioner's motion to amend his 3.850 motion as untimely (Dkt. 16, Ex. 003, Vol. I at 131-32). The failure of a federal habeas petitioner to adhere to state procedural rules will bar federal review of those claims in a subsequent federal habeas corpus proceeding. *See Wainwright v. Sykes*, 433 U.S. 72 (1977); *Sims v. Singletary*, 155 F.3d 1297, 1311 (11th Cir. 1998). The federal habeas court must defer to the state court's interpretation of its procedural rules, and must enforce those rules as well as enforcing the procedural rulings of the state courts. *See Lindsey v. Smith*, 820 F.2d 1137 (11th Cir. 1989).

that claims one and six do not merit post conviction relief." (Dkt. 16, Ex. 003, Supplement at 270). In its final order, the state trial court stated "[i]n his written closing argument, Defendant states his intention to abandon claim one and six of the original motion. As such, the Court holds that claims one and six are abandoned and will not be addressed further." (Dkt. 16, Ex. 003, Vol. II at 217). Accordingly, even if this Court were to construe Petitioner's claim in Ground Two of his federal habeas petition as the same claim raised in Ground Six of his Rule 3.850 state postconviction motion, the claim has been waived or abandoned. Therefore, Ground Two presented in this federal habeas petition must be dismissed as procedurally defaulted.

**Ground Three**

Petitioner claims that a few years prior to the child victim accusing him of sexual abuse, she accused her father[3] of "similar sexual abuse." At trial, he wanted to introduce that the child made a prior claim of sexual abuse against her father, but the trial court refused to admit the information. He argues that the trial court erred in refusing to allow the admission of this information because it was relevant, and the exclusion of the evidence prevented him from presenting a "complete defense."

At trial, counsel for Petitioner informed the Court that depending on what Marilyn Barnes's[4] testimony would be, he wanted to introduce evidence that the victim had previously made an allegation of "similar sexual abuse" against her father (Dkt. 16, Ex. 001, Vol. II at 128). Petitioner's counsel wanted to introduce the evidence because "it certainly may go to explain

---

[3]Petitioner is the child victim's stepfather (Dkt. 16, Ex. 001, Vol. II at 93).

[4]Marilyn Barnes is the nurse practitioner who performed a medical history and examination of the child victim following the claim of sexual abuse by Petitioner (Dkt. 16, Ex. 001, Vol. II at 139-41).

where [the child victim] got the knowledge [of the sexual acts] that she is putting before the jury today", and he didn't "want the jury to be left with the impression that this child has all of this knowledge simply because of this case and she's never gone through any of this before." (Id at 130).

After Marilyn Barnes testified on behalf of the State, and prior to cross-examination, the following colloquy took place:

> MR. PINGOR: Judge, at this time I'd like to ask her about the prior sexual act that [sic] about the 1992 allegations. Her testimony just was, usually when a child talks with this much detail, it happened. I'd like to bring it in. I think she opened the door.
>
> THE COURT: What are you going to ask her?
>
> MR PINGOR: I'm going to ask her if she reviewed documents showing that there was a prior examination done, the same examination, back in '92 when there were allegations made. I think by her statement, saying: When a child describes an incident in this much detail, it happened -- and I think that that opens the door to, if the child is using this much detail doesn't mean it happened. Did you mean it happened the previous time, and I think my client is entitled to have that before the jury.  Now, the state has put -- or made it look like my client must have done it. I think that's opening the door.
>
> MR. PUMPHREY: Judge, I think it's collateral issue. I think just because a child is a victim before doesn't mean they have a propensity to make something up. I think the defense –
>
> THE COURT: No, it's a collateral issue.  I can assure you if you were to object, I - - would have sustained the objection.
>
> MR. PUMPHREY [sic]: But, Judge, they opened the door. I'm entitled to go through with it at this point by making the statement if an 8-year-old child has this much knowledge and detail then it happened. We don't show she may have gotten that knowledge and detail from a previous act.
>
> THE COURT: Well, ask her that question, that type of detail from a previous act. I'm not allowing you to go into the fact that a previous act is out there because I think that part of it's collateral. Ask her to clear it up when she said it happened, if

13

it happened before.

MR. PINGOR: That's fine, Judge.

THE COURT: I think you're entitled to ask that much of it, but at this juncture I'm not going to get into that collateral issue.

(Dkt. 16, Ex. 001, Vol. II at 154-56).

During cross-examination of Marilyn Barnes, the following colloquy took place:

Q. Now, your last - - or one of your last statements was when an 8-year-old child tells a story with this much detail it happened; correct?

A. That was my opinion, yes.

Q. Okay. Does that opinion mean that it happened in this case or that it could have happened in some other case not involving my client?

A. I believe that it happened in this case.

Q. But it means that that information could have come from a prior act, correct, or a prior incident not involving my client?

A. Okay. I'm sorry. You mean if somebody else had done this to her is what you're asking? Yes, I mean, sure.

(Dkt. 16, Ex. 001, Vol. II at 157). Therefore, Petitioner was allowed to present to the jury that the child victim's knowledge of sexual acts could have come from a prior incident of sexual abuse not involving Petitioner, but he was not allowed to present the information that the child victim had made a prior claim of sexual abuse against her father.

During direct examination of Tammy Land, the child victim's mother, the following colloquy took place at a sidebar conference between the court, Petitioner's counsel, and the prosecutor:

MR. PINGOR: Judge, again, I'd like to request that I be able to go into prior

14

sexual abuse that she suffered and that was suffered, or was allegedly suffered, by the victim. She has stated that that is why she jumped to a conclusion. I think it goes directly to her state of mind and why she wanted to question this child.

THE COURT: Let me ask you to proffer that so the record is reflected; and after I hear it I'll rule, not knowing what that testimony is going to be. I'm at a - - disadvantage.

MR. PINGOR: I understand. Do you want me to tell the Court here or do you want to send the jury out?

THE COURT: I would be comfortable that you're going to represent -- that's fine if you want the horses mouth to do it.

MR. PINGOR: Basically one thing I don' t want to mislead the Court what I believe she's going to testify to she was sexually abused in the past. I think she already eluded to that; that is what her state of mind was. That is why -- her daughter may have been sexually abused. Also the fact her daughter was abused previously. That is why her state of mind is such that she questioned the child for fours [sic].

THE COURT: She's testified to that already. I think the question was why did she feel that way? And she clearly said that she'd been sexually abused. It was the story of her whole life; and the prior abuse situation and her daughter, and it's in the record.

MR. PINGOR: That's fine.

MR. PUMPHREY: Judge, my only - - objection -- I don't have a problem with her, talking about her personal prior abuse. What I don't want is this to be used as a conduit to the victim's prior allegation; nor do I want this to be used as a conduit to get into any of our other witnesses prior sexual abuse history.

THE COURT: Quite candidly, if there's no objection getting into her sexual abuse then you can appoint her -- specifically she -- a competency to want to be sure the question is going to be clear.

MR. PUMPHREY: I'm not going to object. I just want to make absolutely sure.

(Dkt. 16, Ex. 001, Vol. III at 202-04).

The constitution irreducibly protects a criminal defendant's right to "a meaningful

15

opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984).

However, in *Crane v. Kentucky*, 476 U.S. 683 (1986) the Supreme Court stated:

> In any given criminal case the trial judge is called upon to make dozens, sometimes hundreds, of decisions concerning the admissibility of evidence. As we reaffirmed earlier this Term, the Constitution leaves to the judges who must make these decisions "wide latitude" to exclude evidence that is "repetitive . . . , only marginally relevant" or poses an undue risk of "harassment, prejudice, [or] confusion of the issues." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986). Moreover, we have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability -- even if the defendant would prefer to see that evidence admitted. *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).

*Id.* at 689-90.

This Court has limited authority, on habeas review, to reevaluate state court evidentiary determinations. *See Hall v. Wainwright*, 733 F.2d 766, 770 (11th Cir. 1984). The Court must accord great deference to a state court evidentiary ruling and should rarely grant habeas relief on the basis of such a ruling. *Demps v. Wainwright*, 805 F.2d 1426, 1430 (11th Cir. 1986). Only when a state evidentiary ruling violates federal constitutional standards may it provide the basis for habeas corpus relief. *Jones v. Kemp*, 794 F.2d 1536 (11th Cir. 1986). The federal constitution is violated when a state evidentiary ruling results in a proceeding that is fundamentally unfair (*Smith v. Wainwright*, 741 F.2d 1248, 1258 (11th Cir. 1984)), thus depriving a criminal defendant of due process. *Panzavecchia v. Wainwright*, 741 F.2d 1248, 1258 (5th Cir. 1981). "A denial of fundamental fairness occurs when the evidence is 'material in the sense of a crucial, critical, highly significant factor.'" *Smith v. Wainwright*, 741 F.2d at 1258 (quoting *Jameson v. Wainwright*, 719 F.2d 1125, 1127 (11th Cir. 1983). "Rarely will an evidentiary ruling render a trial fundamentally unfair and correspondingly federal habeas corpus relief is rarely deemed appropriate for claims predicated on allegations of state evidentiary error." *Nebel v. Sec'y, Dep't*

*of Corr.*, 2006 U.S. Dist. LEXIS 15151 at *8 (M.D. Fla. 2006)(citing *Boykins v. Wainwright*, 737 F.2d 1539, 1543-44 (11th Cir. 1984), *cert. denied*, 470 U.S. 1059 (1985)).

Therefore, the issue here is whether the state trial court's exclusion of evidence of the child victim's prior report of sexual abuse renders Petitioner's conviction fundamentally unfair. The Court finds that it does not. The child victim testified that she and the Petitioner were on the floor together, and Petitioner was touching her privates with his tongue while she and Petitioner were not wearing any clothes (Dkt. 16, Ex. 001, Vol. II at 96-97). Then she testified that her mother, Tammy Land, came home, Petitioner's face became white like a ghost, and she ran into the bathroom (Id. at 97).

Tammy Land testified that when she came into the house she saw Petitioner bent over the child victim, and then Petitioner "jumped up really quick." (Id. at 198). She testified that Petitioner had pants on at the time, but she could not say whether or not the child victim had clothes on because she could only see her feet (Id.). She testified that the first thing that went through her mind "was there's something not quite right going on here the way he jumped and turned kind of flush." (Id. at 199). She also testified that Petitioner "never came out and actually said he was guilty." However, at one point she stated to the police that Petitioner had admitted he committed sexual acts with the child victim for a period of approximately ten months, but at a later date she told the police that she had lied about that statement (Dkt. 16, Ex. 001, Vol. III at 208-12). She also attested that she called her sister, Barbara O'Keefe, and told her "that there could be something going on that shouldn't be going on and I wanted [the child victim] out of the situation if that was - - could be the case. I wanted her out of the situation." (Id. at 206). Shortly thereafter, she sent the child victim to live with Barbara O'Keefe, and the child victim had not

17

come back to live with her since (Id.).

Barbara O'Keefe testified that the child victim told her that she and Petitioner watched a movie together where men and women "were doing things together and that [Petitioner] wanted to teach her how to ask him to ask for things that she wanted from him sexually because he didn't want to have to ask her all the time." (Id. at 162). She also attested that the child victim told her that Petitioner had been touching and putting his mouth on her private parts, and made her put her mouth on his private parts (Id. at 163). She testified that the child victim had told her how her mother had walked into the door while Petitioner was touching and licking her private parts (Id.). She also testified that the child victim had told her of incidents where Petitioner touched her private parts under the blanket in bed, and put his private part on her private part but stopped when she said it hurt (Id. at 164). She attested that the child victim told her that the Petitioner had asked the child victim if she had said anything to anybody, and when she said no, he told her that "it was a good thing that she didn't because she would go to jail and so would he." (Id. at 165-66). Finally, she testified that Tammy Land had told her that the child victim had told Tammy Land the same stories regarding Petitioner's sexual abuse, Tammy Land never told her that the child was lying or that it was a mistake, and for a period of time Tammy Land hated Petitioner for what he had done to the child victim (Id. at 166-67).

Marilyn Barnes testified that the child victim told her that Petitioner had touched her with his tongue on her genital area (Id. at 143). She also testified that the child victim told her about the Petitioner playing a videotape for them to watch where people were naked and touching each other, and that on other occasions the Petitioner put his hands on her genital area and put his private parts on her private parts (Id. at 143-44). She testified that in her opinion there was no

18

indication that this was not a child who was involved in sexual abuse (Id. at 152), and that

"[u]sually when an 8-year-old tells you this much detail, it happened." (Id. at 153). But, she also

testified that the child victim could have obtained information about the sexual acts "if somebody

else had done this to her." (Id. at 157).

William Lowe, the detective who investigated the claim of abuse on the child victim by

Petitioner, testified that the child victim told him that on several occasions the Petitioner touched

her private parts with his mouth and tongue, that he made her touch and suck his privates, and

she also told him about the incidents when Petitioner touched her under the blanket in bed, when

her mother came in the door and caught Petitioner touching her private parts, and when Petitioner

made her watch a sex video (Id. at 174-75). William Lowe also attested that after Petitioner was

arrested, he went to the jail to interview him (177-78). He read Petitioner the Miranda warnings,

then Petitioner told him that the child victim "was very promiscuous" "she would run around the

house naked, come out of the shower and walk around the house in a towel" and "she would

come over when he was giving one of the ...babies a horsie ride on his leg and she would want

him to do the same for her. She would get on his leg, wrap her legs around his and rub up and

down his leg in a sexual fashion." (Id. at 180). Petitioner told Detective Lowe that the child

victim had no reason to lie (Id.). Petitioner also stated that the time when Tammy Land walked

in on him and the child victim, "he and [the child victim] were just horsing around wrestling and

he was tickling her on the floor; and about the same time Tammy came home, [the child victim]

had to go to the bathroom. That's why she jumped up." (Id.). Petitioner also told Detective

Lowe that "he knew he had a problem" that "he was having sexual thoughts about [the child

victim] [and] having thoughts of having sexual relations with [her]." (Id. at 181-82). Detective

Lowe testified that Petitioner never admitted to actually having sexual relations with the child victim (Id. at 182).

During his closing argument, the prosecutor stated that Marilyn Barnes "told you that she believed what this child told her is exactly what happened." (Dkt. 16, Ex. 001, Vol. III at 247). However, he never argued that the child victim could not have gained her sexual knowledge unless the sexual assaults Petitioner was alleged to have committed occurred (Id. at 218-231; 242-251).

When viewed in the context of the entire record, the evidence that the child victim had previously reported that her father had sexually abused her[5] was not material in the sense of being a crucial, critical, highly significant factor as the outcome of the case would not have been different had the evidence been admitted. Even if the evidence had been admitted there was sufficient evidence at trial, including the child victim's testimony, the other witnesses' testimony, and Petitioner's statements to Detective Lowe, which amply supported the jury's determination that Petitioner was guilty of the charge against him. Exclusion of the evidence of the prior claim of abuse did not fatally infect the trial so as to deprive Petitioner of due process. Consequently, no constitutional violation occurred when the trial court excluded this evidence at the trial. Accordingly, Petitioner's Ground Three will be denied.

---

[5]Petitioner's counsel stated that the child victim made a prior allegation against her father of "similar sexual abuse." (Dkt. 16, Ex. 001, Vol. II at 128). When the court asked counsel what he wanted to ask Marilyn Barnes regarding the prior allegation, he stated that "I'm gong to ask her if she reviewed documents showing that there was a prior examination done, the same examination, back in '92 when there were allegations made." (Id. at 155). He did not proffer the specific nature of the abuse or any other information showing that the facts of the prior abuse were similar to the child victim's claims against the Petitioner. In any event, even assuming that the prior allegation of sexual abuse was "similar" to the claims against the Petitioner, the Court still finds that the evidence was not "crucial, critical, highly significant" and its exclusion did not deprive Petitioner of a fundamentally fair trial.

**Ground Four**

Petitioner claims he was denied a fair trial when the state trial court allowed the witnesses to testify regarding the statements the child victim made to them.  He argues that because the child victim's testimony was clear at trial, allowing the witnesses to testify as to the child victim's statements to them regarding the sexual abuse was cumulative and highly prejudicial.

Again, this Court does not sit as a court of appeal of state court evidentiary rulings. Those matters are to be resolved by state courts because they concern state law issues. *See Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002). Federal courts in habeas corpus proceedings do not sit to review state evidentiary questions unless the alleged error is of such magnitude as to render the state court defendant's trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

Following a hearing outside the presence of the jury, the state trial court found the child victim's hearsay statements to the witnesses admissible pursuant to Florida Statute, Section 90.803(23).[6] (Dkt. 16, Ex. 001, Vol. II at 107-127).  The state trial court made the findings

---

[6]Section 90.803(23) states:

(23) HEARSAY EXCEPTION; STATEMENT OF CHILD VICTIM.

(a) Unless the source of information or the method or circumstances by which the statement is reported indicates a lack of trustworthiness, an out-of-court statement made by a child victim with a physical, mental, emotional, or developmental age of 11 or less describing any act of child abuse or neglect, any act of sexual abuse against a child, the offense of child abuse, the offense of aggravated child abuse, or any offense involving an unlawful sexual act, contact, intrusion, or penetration performed in the presence of, with, by, or on the declarant child, not otherwise admissible, is admissible in evidence in any civil or criminal proceeding if:

1. The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability. In making its determination, the court may consider the mental and physical age and maturity of the child, the nature and duration of the abuse or offense, the relationship of the child to the offender, the reliability of the assertion, the reliability of the child victim, and any other factor deemed appropriate; and

2. The child either:

required by 90.803(23), and therefore, appropriately found that the hearsay statements were admissible in evidence. Moreover, the testimony of the witnesses was not merely cumulative to the child victim's testimony, but provided additional information regarding Petitioner's sexual activity with the child victim (Dkt. 16, Ex. 001, Vol. II at 91-195). Although some of the witnesses' testimony was cumulative to the child victim's testimony, this Court finds that in context of the entire trial the admission of the witnesses' testimony regarding the child victim's statements did not render the trial as a whole "fundamentally unfair." Accordingly, Ground Four must be denied.

**Ground Five**

In Ground Five, Petitioner claims his trial counsel was ineffective for failing to object to the witnesses vouching for the credibility of the child victim. Specifically, Petitioner claims Ms. O'Keefe, Detective Lowe, and Marilyn Barnes all vouched for the child victim, and thereby infringed upon the jury's exclusive role of evaluating the credibility of witnesses.

Petitioner raised this claim as Ground 2 in his Rule 3.850 state post-conviction motion (Dkt. 16, Ex. 003, Vol. I at 5-7). The state trial court denied this claim, in part, in its May 3,

---

a. Testifies; or

b. Is unavailable as a witness, provided that there is other corroborative evidence of the abuse or offense. Unavailability shall include a finding by the court that the child's participation in the trial or proceeding would result in a substantial likelihood of severe emotional or mental harm, in addition to findings pursuant to s. 90.804(1).

(b) In a criminal action, the defendant shall be notified no later than 10 days before trial that a statement which qualifies as a hearsay exception pursuant to this subsection will be offered as evidence at trial. The notice shall include a written statement of the content of the child's statement, the time at which the statement was made, the circumstances surrounding the statement which indicate its reliability, and such other particulars as necessary to provide full disclosure of the statement.

(c) The court shall make specific findings of fact, on the record, as to the basis for its ruling under this subsection.

2002 order (Dkt. 16, Ex. 003, Vol. I at 91).  In that order the state trial court stated in pertinent

part that "none of the testimony, of Barbara O'Keefe, William Lowe or Tammy Land, listed by

Defendant, demonstrates impermissible testimony regarding the victim's credibility[,]" and

"Defendant's claim with regard to Marilyn Barnes [sic] testimony is best resolved at an

evidentiary hearing." (Id.).  Following an evidentiary hearing, the state trial court denied the

claim as it related to Marilyn Barnes and stated:

### Claim Two & Four

As to claims [sic] two, his failure to object to Nurse Barnes' [sic] comments on the victim's credibility, and claim, [sic] four, his failure to object to the videotaped deposition being entered into evidence, Defendant's ex-counsel testified that this was a matter of trial strategy. His stated trial strategy was to argue that the victim's mother jumped to and acted on the erroneous conclusion that her daughter was being sexually abused by her stepfather/mother's new husband based on the mother's own history of sexual abuse and that the mother's influence caused the victim to make the allegations, and secondary, that the victim was aware of certain terminology because of her own prior allegation of sexual abuse against her father. The record reflects that counsel argued this during his closings. *[see Exhibit A: Excerpt of Trial Transcript, pp. 231 - 242]*.

Defendant has failed to show that counsel's strategy was unreasonable under the unique circumstances of this case. Freeman v. State, 796 So. 2d 574, 576 (Fla. 2d DCA 2001) (citing to Strickland at 2065, 689). Although there was no physical evidence to substantiate the victim's testimony that multiple incidents of sexual abuse occurred, in light of Defendant's statements to police (as testified to by Detective Lowe) in which he admitted to having lustful feelings toward his eight-year old victim and that the victim had no reason to fabricate the charges, his wife's proactive role in discovering the abuse and later recantation of her statements to police and her sister that Defendant admitted to the offense, this defense strategy cannot be held to be unreasonable. *[See Exhibit a at pp. 180-182; 211-212; 215-216]*.

Further, the Court must also be mindful that just because a trial strategy was unsuccessful does not mean that counsel's representation was deficient. Strickland v. Washington, 104 S. Ct. 2052, 2065; 466 U.S. 668, 689; 80 L. Ed. 2d 674 (1984). Despite existing case law that supported his position, counsel obtained many adverse ruling [sic] to his several attempts to introduce evidence

regarding the victim's prior knowledge of sexual matters. McLean v. State, 754 So. 2d 176 (Fla. 2d DCA 2000); see also Dixon v. State, 605 So. 2d 960 (Fla. 2d DCA 1992); *[pp. 129 - 133; 153 - 157; 202 - 204]*. Further damaging Defendant's defense, Defendant's pivotal witness exclaimed upon cross-examination that "she would not call her daughter a liar." Counsel's performance cannot be deemed deficient based on adverse evidentiary rulings and a witnesses' [sic] unexpected testimony, that which he cannot control.

A trial court deciding an actual ineffectiveness claim must determine "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct 2052, 2066 (1984). Simply phrased, the distorting effects of hindsight must be eliminated in making this determination. Kelley v. State, 596 So. 2d 754, 759 (Fla. 1990) (citing to Strickland at 2065,689). As to failing to object to the nurse's comments on the victim's credibility, counsel testified at the evidentiary hearing that he was aware at time of the trial that he had sustainable grounds to object, but did not do so based on trial strategy. The Court finds counsel's testimony credible since, at the time of Defendant's trial counsel, practiced in area of criminal law for thirteen years. He also confirmed in his testimony that since his notes, file, etc. were not available, that the best indicator of his trial strategy was the trial transcript. After the denial of his motion in limine to use said evidence, the record shows that counsel used the nurse's comments, especially her comment that "an eight-year old having this much knowledge and detail then it happened" in conjunction with this strategy to attempt to introduce into evidence the victim's past sexual abuse allegation. Although the Court ruled otherwise, counsel was able to elicit and did elicit from the nurse that the victim's knowledge could come from other sources. *[see Exhibit A at pp. 153 - 157]*. Furthermore, the victim's mother's testimony alluded to past instances of sexual abuse by the father. *[see Exhibit A at p. 199]*. Therefore, the Court finds that counsel's failure to object was based on trial strategy.

*** 

(Dkt. 16, Ex. 003, Vol. II at 217-218).

Initially, the Court agrees with the state trial court that Detective Lowe's testimony that Petitioner told him that the child victim "had no reason to lie" (Dkt. 16, Ex. 001, Vol. II at 180), and Barbara O'Keefe's testimony that the child victim's and Tammy Land's statements were "consistent" (Dkt. 16, Ex. 001, Vol. II at 166), is not improper vouching for

the truthfulness of the child victim's testimony.  Under Florida law, "allowing one witness to offer a personal view on the credibility of a fellow witness is an invasion of the province of the jury to determine a witness's credibility." *Jones v. State*, 949 So. 2d 1021, 1039 (Fla. 2006)(quotation omitted).  Neither Barbara O'Keefe or Detective Lowe commented on the credibility of the child victim.  Barbara O'Keefe testified that the child's and mother's statements were consistent, and Detective Lowe testified as to Petitioner's statements to him.

Petitioner's counsel testified at the Rule 3.850 evidentiary hearing that part of his trial strategy was to attempt to show that the child victim was able to describe sexual acts because of past sexual abuse by her father, and that Marilyn Barnes's testimony could support that defense because she testified that she believed that the child had been a victim of sexual abuse, and that the child could have learned to describe the sexual acts as a result of a prior sexual abuse not involving Petitioner (Dkt. 16, Ex. 003, Vol. II at 163-65).  Accordingly, counsel did not object to Marilyn Barnes's statements.

Disagreements by a defendant with counsel's tactics or strategies will not support a claim of ineffective assistance of counsel. A habeas petitioner must overcome a presumption that the challenged conduct of one's counsel was a matter of strategy. *Strickland*, 466 U.S. at 689; *United States v. Perry*, 908 F.2d 56, 59 (6th Cir, 1990). "Even if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so." *Rogers v. Zant*, 13 F.3d at 386 (11th Cir. 1994).  Considering counsel's testimony that he did not object to the witnesses' statements as a matter of trial strategy, Petitioner has not demonstrated that counsel's trial strategy was deficient under this standard.

25

Petitioner has not shown that the state court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. Therefore, Petitioner has not satisfied the threshold requirement of 28 U.S.C. 2254(d) and (e), and is not entitled to habeas relief.

**Ground Six**

Petitioner claims that counsel was ineffective for failing to object to the admission at trial of evidence of uncharged criminal acts committed by him. Petitioner was charged with a single count of capital sexual battery. During trial the State presented evidence of other offenses committed by Petitioner which included testimony that Petitioner showed the victim a pornographic video, touched her vagina, put his penis in her mouth, and put his penis on her vagina. Petitioner appears to argue that introduction of the evidence of other criminal acts violated Florida Statute, Section 90.404(2) because the evidence was admitted solely to prove bad character or his propensity to commit the crime for which he was charged.[7]

---

[7]At the time of Petitioner's trial, 90.404(2) stated:

(2) OTHER CRIMES, WRONGS, OR ACTS.--

(a) Similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissible when the evidence is relevant solely to prove bad character or propensity.

(b)1. When the state in a criminal action intends to offer evidence of other criminal offenses under paragraph (a), no fewer than 10 days before trial, the state shall furnish to the accused a written statement of the acts or offenses it intends to offer, describing them with the particularity required of an indictment or information. No notice is required for evidence of offenses used for impeachment or on rebuttal.

2. When the evidence is admitted, the court shall, if requested, charge the jury on the limited purpose for which the evidence is received and is to be considered. After the close of the evidence, the jury shall be instructed on the limited purpose for which the evidence was received and that the defendant cannot be convicted for a charge not

26

Petitioner raised this claim as Ground 3 in his Rule 3.850 state post-conviction

motion (Dkt. 16, Ex. 003, Vol. I at 7-9).   In denying the claim, the state trial court stated:

### Claim Three

   At claim three, Defendant alleged that counsel's failure to object to
improper Williams Rule evidence of collateral incidents of sexual abuse to the
same victim, namely the Easter incident and videotape. Counsel testified that he
did not object because he did not feel that he had sufficient legal reason to do so.
In his written argument, Defendant asserts that had [sic] the time of his trial, the
issue of collateral crimes evidence was not per se admissible as Williams Rule
evidence because it involved a familiar setting citing Feller v. State, 637 So. 2d
911 (Fla. 1994). However, Feller is distinguishable from the instant case since
Feller involved a different victim within the family. The instant collateral
evidence involves the same underage victim as alleged in the Information.
Furthermore, case law existed at the time of Defendant's trial that supports
counsel's testimony. Evidence of collateral acts committed against the same
victim is less objectionable than such evidence against other victims. State v.
Paille, 601 So. 2d 1321 (Fla. 2d DCA 1992); Padgett v. State, 551 So. 2d 1259
(Fla. 51h DCA 1989); Smith v. State, 538 So. 2d 66 (Fla. 1st DCA 1989). In light
of the planned defense strategy, it is likely that [sic] the evidence would be
pertinent to show a pattern of abuse, to show plan since the charged offense
occurred when Defendant did not expect the mother to return, and to show that
Defendant acted in accordance with his stated lustful feelings toward the victim,
etc. See §90.404, Fla. Stat.; Paille at 1323; Smith at 67.

   In his written closing argument, Defendant states that counsel should also
have objected because Nurse Barnes was not listed in the State's Notice. However,
the defense suffered no prejudice. Although counsel did not himself take the
deposition of Nurse Barnes in which she testified as to the victim's account of
other instances of sexual abuse, counsel testified that he reviewed the discovery
materials in the case. [see Exhibit B: Excerpt of Nurse Barnes' deposition
transcript, pp. 18 - 26]. Consequently, there was no surprise associated with this
witness testifying to Williams rule evidence. Paille at 1324. Therefore, this claim
is denied.

(Dkt. 16, Ex. 003, Vol. II at 219-220).

   The Court agrees with the state trial court that the evidence was admissible to show a

---

included in the indictment or information.

pattern of abuse and to show Petitioner acted in accordance with his stated lustful feelings towards the victim. *See Smith v. State*, 538 So. 2d 66, 67 (Fla. 1st DCA 1989)("Evidence of prior, similar sex acts with a minor victim is admissible, where the relevancy test is met, to show a pattern of conduct."); *Gibbs v. State*, 394 So. 2d 231 (Fla. 1st DCA )(evidence of prior similar sex acts committed by the accused against the same victim admissible to show lustful state of mind toward victim). Moreover, "[e]vidence that deals only with similar sex acts against the victim in the case being tried is far *less* subject to objection than evidence of similar acts against other victims." *Smith*, 538 So. 2d at 67 (emphasis in original).

Petitioner has not shown counsel's performance was deficient or that if deficient, he was prejudiced by that performance, as required by the *Strickland* test. Petitioner has not met his burden of proving that the state court's determination is an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of the facts. Accordingly, Ground Six is without merit.[8]

**Ground Seven**

Petitioner argues that counsel was ineffective for failing to object to the admission of the child victim's videotaped deposition at trial, for failing to object to only a portion of the deposition being shown at trial, and for failing to object to the court allowing the jury to have the videotaped deposition in the jury deliberation room.

Petitioner raised this claim as Ground 5 in his Rule 3.850 state post-conviction

---

[8]To the extent Petitioner argues that counsel was ineffective for failing to request a limiting instruction or jury instruction regarding the evidence of similar sex acts with the victim, Petitioner did not raise the claim in his Rule 3.850 state post-conviction motion (Dkt. 16, Ex. 003, Vol. I at 7-9). Accordingly, the claim is not exhausted, and is procedurally barred.

motion (Dkt. 16, Ex. 003, Vol. I at 13-17).  In denying this claim, the state trial court stated:

> As to claim four, the Court finds that counsel's failure to object to the introduction of the videotaped deposition into evidence was the result of trial strategy. Defendant bears the burden of demonstrating that counsel did not represent him in a reasonable matter. <u>Freeman</u> at 576. Counsel testified that this action was the result of his trial strategy and that the videotape evidenced the victim's demeanor as he argued in closing at trial. Counsel also testified that he knew that if he objected to the videotape's introduction into evidence that it would be reversible error for the court to introduce the videotaped deposition over his objection. Although, as Defendant suggests, it is unknown whether the jury viewed the tape during deliberations and that his ex-counsel could have requested that the tape entered into evidence could have been played in the courtroom, Defendant has failed to demonstrate that the prejudice prong of the <u>Strickland</u> test. Defendant did not produce the videotaped deposition at the evidentiary hearing for the Court to evaluate the videotape's potential for creating a reasonable probability that, had counsel done as suggested that the trial's outcome would have been different. Further, Defendant, in his written argument, suggests that the rehearing of the victim's testimony via the videotape was detrimental to the outcome. However, this is purely speculative since the record nor the testimony presented at hearing demonstrate that the jury viewed the videotape. In fact, Defendant's ex-counsel testified that he did not know whether the jury viewed the videotape during deliberations; he only testified that he did not believe that the jury did based on his recollection of the short deliberation period.

(Dkt. 16, Ex. 003, Vol. II at 218-219).[9]

The record supports the state court's denial of this claim.  Counsel testified at the evidentiary hearing that he discussed the introduction of the video with Petitioner, and that Petitioner had no objection to allowing the video to be introduced at trial (Dkt. 16, Ex. 003, Vol. II at 169).  Counsel also testified that he wanted the jury to view the video because he wanted them to observe the child victim's demeanor and hear her statement because he believed it helped support their defense that the child victim's claim was not her own, but that her mother coached her or encouraged her to make the claim (Dkt. 16, Ex. 003, Vol. II at

---

[9]Although the state court referred to Petitioner's "videotape" claim as "Ground Four", the claim actually was Petitioner's Ground 5 (Dkt. 16, Ex. 003, Vol. I at 13-17).

1 71-73). During closing argument, counsel encouraged the jury to watch the video and "look at her demeanor", "look at the way she answers questions", and "look at the way she rocks in here chair", and he argued "she's not reliving any kind of experience...she's telling a story is what she's doing."  (Dkt. 16, Ex. 001, Vol. III at 240).  Therefore, counsel's decision to allow the jury to view the videotape was clearly a matter of trial strategy.

Petitioner has not met his burden of proving that the state court's determination is an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of the facts.  Accordingly, Ground Seven will be denied.

**Ground Eight**

Petitioner claims his counsel was ineffective for failing to object to several of the prosecutor's comments during his closing argument.  Specifically, Petitioner asserts counsel was ineffective when he failed to object when the prosecutor:1) told the jury Petitioner was guilty; 2) accused Petitioner of manipulating witnesses, and called him "Geppetto the puppet master"; 3) argued strongly to the jury that the victim's statement that the act of Petitioner performing oral sex on her made her feel like she had to urinate was corroborated by Nurse Barnes; 4) referred numerous times to Nurse Barnes as "Doctor" Barnes; 5) misstated testimony that the victim testified that the act of Petitioner performing oral sex on her made her feel like she had to urinate, when the victim did not say this on the stand, but instead revealed this information to Nurse Barnes, who revealed this statement to the jury; 6) put words in the victim's mouth by leading the witness; 7) misled the jury by arguing that the mother never permitted the victim to live in the same house with Petitioner after the abuse was revealed; and 8) repeatedly stated "what kind of man would have sex with an 8 year old

30

child."

Petitioner raised this claim as Ground 4 in his Rule 3.850 state post-conviction

motion (Dkt. 16, Ex. 003, Vol. I at 9-13).  In denying the claim, the state trial court stated:

### GROUND FOUR

### Ineffective Assistance of Counsel

Defendant alleges that counsel was ineffective for failing to object to improper and prejudicial remarks by the prosecutor during closing arguments. In its response the State argues, and the Court agrees, that Defendant has not sufficiently demonstrated how he was prejudiced by counsel's alleged omissions under this ground.

Defendant argues that the prosecutor improperly asserted that Defendant was guilty. As the State argued, the prosecutor was merely arguing to the jury the conclusion they should reach based on the evidence. *See Exhibit A (pg. 219).* Defendant also argues that the prosecutor improperly accused Defendant of manipulating his wife's testimony. The State again correctly points out that the prosecutor was presenting the relationship of the parties for the jury to consider when weighing the testimony of the witnesses. *See Exhibit A (pp. 227-228, 251).* Defendant also complains that the prosecutor improperly referred to him as "Geppetto the puppet master" and counsel failed to object. While this characterization may have been questionable, Defendant has not adequately demonstrated how he was prejudiced. Defendant cannot say that the outcome of the trial would likely have been different had counsel objected. *See Exhibit A (pp. 227-230,251).*

Defendant further argues that the prosecutor misled the jury with regard to several points he made during closing arguments, while defense counsel failed to object. Specifically, Defendant argues that the prosecutor incorrectly stated that the victim told Nurse Barnes that the sexual abuse made her feel like she had to urinate. *See Exhibit A (pg. 246).* Defendant argues that this was a misstatement of the evidence as the victim never made such a statement to the nurse. *See Exhibit A (pg. 152).* The State points out that while the victim did not specifically tell the nurse that she felt like she had to urinate, the victim did testify that she had that feeling and the nurse testified that this was consistent with a child who was sexually abused. *See Exhibit A (pp. 97, 152).*

Defendant also argues that the prosecutor repeatedly referred to Nurse Barnes as Doctor Barnes, giving the nurse's testimony increased credibility. *See*

31

*Exhibit A (pp. 138, 146-147, 150,152-153, 225, 227).* While the prosecutor did refer to Nurse Barnes as a doctor on more than one occasion, Nurse Barnes testified with regard to her background and training, when she first took the stand. *See Exhibit A (pp. 137-140).* The jury therefore heard that she was a nurse practitioner not a doctor and Defendant was not prejudiced.

Defendant argues that the prosecutor improperly argued a fact not in evidence by telling the jury that the victim felt like she had to urinate at the time of the sexual abuse. Defendant argues that the prosecutor put words into the victim's mouth. While the prosecutor's question was leading, the victim did affirmatively answer that she felt like she had to urinate. It was therefore not a misstatement of the evidence to argue this point to the jury and defense counsel cannot be said to be remiss for failing to object to a misstatement of the evidence.

Defendant argues that the prosecutor misled the jury by telling them that the victim's mother never let the victim back in the same house with Defendant. *See Exhibit A (pg. 227).* Defendant argues that he and the victim were never in the same house again because of a court order not because of mother's conscious choice to keep them apart. As the State points out in its response, the victim's mother did testify that she sent the victim to live with her aunt after the incident and the victim had not been back home since the incident. *See Exhibit A (pg. 206).* Whether or not the Court ordered no contact between the victim and Defendant, it could be legitimately argued that mother did not want the two to have contact. Defendant has not clearly demonstrated how counsel was deficient for not objecting to this statement nor has he sufficiently shown how he was prejudiced.

Defendant finally argues that counsel was ineffective for failing to object when the prosecutor inflamed the jury by arguing, "What kind of man has sex with an 8 year old child." Defendant argues that the prosecutor repeated this theme several times throughout opening statements and closing arguments. The Court, however, agrees with the State that these comments did not prejudice Defendant. The prosecutor was arguing a theme consistent with the crime that Defendant was charged with.

Defendant has not sufficiently shown how counsel was deficient nor has he demonstrated prejudice under this ground. This claim is denied.

(Dkt. 16, Ex. 003, Vol. I at 92-94).

To amount to a constitutional violation, the prosecutor's remarks must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process."

*Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). Closing argument is intended to "assist the jury in analyzing, evaluating and applying the evidence." *United States v. Pearson*, 746 F.2d 787, 796 (11th Cir. 1984). Thus, the prosecutor is not limited to a bare recitation of the facts; he may "comment" on the evidence, *id*. at 796, and may "state his contention as to the conclusions the jury should draw from the evidence." *United States v. Johns*, 734 F.2d 657, 663 (11th Cir. 1984). "If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair." *Tucker v. Kemp*, 802 F.2d 1293, 1296 (11th Cir. 1986)(en banc), *cert. denied*, 480 U.S. 911 (1987).

Petitioner has not shown that counsel was deficient for failing to object to the statements by the prosecutor, and that absent the allegedly improper remarks, the jury's decision would have been different. The trial court's determination that Petitioner is not entitled to relief is a reasonable application of *Strickland*. *Strickland*, 466 U.S. at 697.

Therefore, Ground Eight will be denied.

**Ground Nine**

In his final claim, Petitioner asserts that the state trial court erred when it denied his motion, through appointed counsel, to amend his Rule 3.850 state post-conviction motion. On February 21, 2003, counsel for Petitioner moved to amend Petitioner's 3.850 motion to include additional claims (Dkt. 16, Ex. 003, Vol. I at 129). The state court denied the motion because the two-year limitation period to file a post-conviction motion applies to amendments to the original motion, and the two-year limitation period had expired (Id. at 131-32). Petitioner appealed the denial of his post-conviction motion and claimed, *inter alia*,

33

that the state trial court erred when it denied his motion to amend his post-conviction motion (Dkt. 16, Ex. 004, Petitioner's Initial Brief at pages 22-23). The state appellate court per curiam affirmed the denial of Petitioner's 3.850 motion (Dkt. 16, Ex. 004 at page 1).

Generally, claims alleging a violation of state law are not subject to review in federal habeas proceedings. *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *McCullough v. Singletary*, 967 F.2d 530, 535-36 (11th Cir. 1992). The purpose of a federal habeas proceeding is to review the lawfulness of a prisoner's custody to determine whether the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Coleman v. Thompson*, 501 U.S. 722, 730 (1991).

The Eleventh Circuit Court of Appeals has held that questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes, and that a state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, because no question of a constitutional nature is involved. *Jones v. Goodwin*, 982 F.2d 464, 471 (11th Cir. 1993); *see also Krasnow v. Navarro*, 909 F.2d 451, 452 (11th Cir. 1990); *Carrizales v. Wainwright*, 699 F.2d 1053 (11th Cir. 1983). The federal habeas corpus court will be bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate. *McCoy v. Newsome*, 953 F.2d 1252, 1264 (11th Cir.), *cert. denied*, 504 U.S. 944 (1992). State courts are the ultimate expositors of their own state's laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes by the courts of the state except in extreme cases. *Mendiola v. Estelle*, 635 F.2d 487, 489 (5th Cir. Unit A 1981).

Petitioner's claim that the state court erred when it denied his motion to amend his

34

Rule 3.850 post-conviction motion is based on state law issues.  Therefore, the claim is not cognizable on federal habeas corpus review.

To the extent Petitioner argues the state court's denial of his motion to amend his post-conviction motion has deprived him of due process of law, such a claim does not present an issue that is cognizable on federal habeas review.  In the Eleventh Circuit a § 2254 court is not an appropriate forum for a prisoner to challenge the process afforded him in state collateral proceedings because such a claim represents an attack on a proceeding collateral to the prisoner's confinement and not the confinement itself. *Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004) (affirming district court's denial of habeas relief based on state court judge's refusal to recuse himself from the Rule 3.850 hearing, explaining "while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief."); *Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (per curiam) (concluding § 2254 claim that petitioner's due process rights were violated when state post-conviction court held no evidentiary hearing and failed to attach appropriate portions of record to its opinion "goes to issues unrelated to the cause of petitioner's detention [and] does not state a basis for habeas relief").  Accordingly, Ground Nine is denied.

### Conclusion

For reasons set forth *supra*, the Court finds that Petitioner has not demonstrated that he is entitled to federal habeas relief.

ACCORDINGLY, the Court **ORDERS** that:

1.  The Petition for Writ of Habeas Corpus is **DENIED** (Dkt. 1).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and

close this case.

**DONE and ORDERED** in Tampa, Florida, on _March 26th_____, 2008.

_____
JAMES D. WHITTEMORE
United States District Judge

SA:sfc

Copy to: All Parties/Counsel of Record

36